J. A09001/16
J. A09002/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  A.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF:  D.S., FATHER | : | |
| | : | No. 1850 MDA 2015 |

Appeal from the Decree, September 25, 2015,
in the Court of Common Pleas of York County
Orphans' Court Division at No. 2015-0085

| | | |
|---|---|---|
| IN RE:  ADOPTION OF: | : | IN THE SUPERIOR COURT OF |
| D.N.L.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1851 MDA 2015 |
| | : | |

Appeal from the Decree, September 25, 2015,
in the Court of Common Pleas of York County
Orphans' Court Division at No. 2015-0086

| | | |
|---|---|---|
| IN RE:  ADOPTION OF: | : | IN THE SUPERIOR COURT OF |
| S.H.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1852 MDA 2015 |

Appeal from the Decree, September 25, 2015,
in the Court of Common Pleas of York County
Orphans' Court Division at No. 2015-0087

| | | |
|---|---|---|
| IN RE:  ADOPTION OF: | : | IN THE SUPERIOR COURT OF |
| W.D.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1853 MDA 2015 |

J. A09001/16
J. A09002/16

Appeal from the Decree, September 25, 2015,
in the Court of Common Pleas of York County
Orphans' Court Division at No. 2015-0088

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| A.M.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1854 MDA 2015 |

Appeal from the Order Entered September 28, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No. CP-67-DP-113-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| D.N.L.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1855 MDA 2015 |

Appeal from the Order Entered September 28, 2015
in the Court of Common Pleas of York County
Juvenile Division at No. CP-67-DP-111-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| S.H.S., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  D.S., FATHER | : | No. 1856 MDA 2015 |

Appeal from the Order Entered September 28, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No. CP-67-DP-110-2013

J. A09001/16
J. A09002/16


IN THE INTEREST OF:               :          IN THE SUPERIOR COURT OF
W.D.S., A MINOR                    :               PENNSYLVANIA
                                  :
APPEAL OF:  D.S., FATHER           :          No. 1857 MDA 2015


Appeal from the Order Entered September 28, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No. CP-67-DP-0000112-2013


BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,[*] JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 08, 2016**

D.S. ("Father") appeals from the decrees entered September 25, 2015, in the Court of Common Pleas of York County, which involuntarily terminated his parental rights to his minor daughters, A.M.S., born in April of 2002; W.D.S., born in November of 2004; D.N.L.S., born in July of 2009; and S.H.S., born in September of 2010 (collectively, "the Children").[1]  In addition, Father appeals from the orders entered September 28, 2015, which changed the Children's permanency goals to adoption.  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Children's mother, H.S. ("Mother"), relinquished her parental rights voluntarily.  Mother has not filed a brief in connection with Father's appeal, nor has she filed her own separate appeal.

On May 17, 2013, the York County Office of Children, Youth and Families ("CYF") filed dependency petitions with respect to each of the Children. In its petitions, CYF alleged that Mother was recently incarcerated due to child endangerment charges. (Dependency Petitions, 5/17/13 at 4 (allegations of dependency at ¶ 19).) The petitions explained that Mother was in a relationship with a violent sex offender, and she and the sex offender had been residing in a hotel room with the Children. (*Id.* at 3 (allegations of dependency at ¶ 2-4).) In addition, Mother was failing to supervise the Children adequately. (*Id.* at 4 (allegations of dependency at ¶ 8-16).) At the time CYF filed its dependency petitions, Father also was incarcerated, and was not available to care for the Children. (*Id.* at 5 (allegations of dependency at ¶ 20).) The Children were adjudicated dependent by orders entered July 10, 2013.

On July 1, 2015, CYF filed petitions to terminate Father's parental rights to the Children involuntarily, as well as petitions to change the Children's permanency goals to adoption. A combined termination and goal change hearing took place on August 14, 2015, and September 11, 2015. Following the hearing, on September 25, 2015, the trial court entered its decrees terminating Father's parental rights involuntarily. On September 28, 2015, the court entered its orders changing the Children's permanency goals to adoption. Father timely filed notices of appeal on

October 23, 2015, along with concise statements of errors complained of on appeal.

Father now raises the following issues for our review.

I.     Whether the trial court erred in finding that [CYF] established by clear and convincing evidence that Father has failed to perform parental duties for a period in excess of six months when Father provided for his Children during regular visitation and scheduled and attended the Children's medical and education appointments[?]

II.    Whether the trial court erred in finding that [CYF] established by clear and convincing evidence that Father caused the Children to be without essential parental care, control or subsistence and refused to remedy these conditions when Father was no longer incarcerated and was able to obtain employment upon his release from prison[?]

III.   Whether the trial court erred in finding that [CYF] established by clear and convincing evidence that Father would be unable to remedy the conditions which led to the Children's removal with adequate assistance and services when no alternative services were initiated after the in-home team terminated[?]

IV.    Whether the trial court erred in finding that [CYF] established by clear and convincing evidence that the conditions which led to the Children's removal from the Father's care continue to exist when Father was no longer incarcerated, able to obtain employment upon his release from prison, and consistently inquired about the Children both during and after his incarceration[?]

      V.     Whether the trial court erred in finding that [CYF] established by clear and convincing evidence that termination of parental rights would best serve the needs and welfare of the Children when a bond exists among Father and the Children[?]

      VI.    Whether the trial court erred in changing the goal from reunification to placement for adoption where a bond exists among the Father and Children and it is not in the best interests of the Children to sever the bond with Father[?]

Father's brief at 11-12 (unnecessary capitalization omitted).

We first consider whether the trial court erred or abused its discretion by involuntarily terminating Father's parental rights to the Children. We do so mindful of the following.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity,

> abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002) (citations omitted).

Instantly, the trial court found that Father has made little, if any, progress in completing the goals set forth in his Family Service Plan ("FSP"). (Adjudication, 9/25/15 at 15.) The trial court emphasized that Father has repeatedly changed residences, failed to provide CYF with verification of his employment, and failed to complete a mental health assessment. (*Id.*) The court noted that Father has attended his visits with the Children regularly, but that his behavior during these visits was often inappropriate. (*Id.*)

Father argues that he has not been given sufficient time to demonstrate his parenting abilities. (Father's brief at 33.) Father contends that he was incarcerated for a portion of the Children's dependency, and that he was limited in his ability to work toward reunification while incarcerated and while on parole. (*Id.*) Father stresses that he has maintained regular visitation with the Children. (*Id.*)

After a thorough review of the record in this matter, we conclude that the trial court did not err or abuse its discretion. During the termination and goal change hearing, CYF presented the testimony of family support caseworker, Natasha Daugherty. Ms. Daugherty testified that CYF asked Father to complete several FSP goals, including obtaining and maintaining housing and employment, attending visits with the Children, and complying with the conditions of his parole.[2] (Notes of testimony, 8/14/15 at 165.)

Concerning Father's housing and employment, Ms. Daugherty testified that Father has resided in eleven different locations since the Children were adjudicated dependent, including two periods of incarceration.[3] (*Id.* at 166-170.) Ms. Daugherty has never had the opportunity to visit one of Father's residences, outside of visiting him while he was incarcerated. (*Id.* at 170.) Father recently scheduled a visit with Ms. Daugherty at his home, but later canceled the visit and did not reschedule. (*Id.* at 172.) As a result, Ms. Daugherty has not been able to determine whether Father's current

---

[2] In addition, Father was asked to sign releases, and to notify CYF of any phone number or address changes within 24 hours. (Notes of testimony, 8/14/15 at 165.) Ms. Daugherty noted that Father has been resistant with respect to signing releases and keeping CYF apprised of his phone number and address. (*Id.* at 165.)

[3] Father first was incarcerated from February of 2013 until September of 2014, due to charges of theft by unlawful taking. (Notes of testimony, 8/14/15 at 166.) Father again was incarcerated from May 24, 2015, until June 5, 2015, due to a variety of criminal charges, including fleeing or attempting to elude a police officer, conspiracy, recklessly endangering another person, and resisting arrest, *inter alia*. (*Id.* at 167.)

residence is appropriate for the Children. (*Id.* at 171.) Similarly, Ms. Daugherty has not been able to verify Father's current employment. (*Id.* at 165.) Ms. Daugherty explained that Father's attorney sent her a set of six pay stubs from two different employers in April of 2015. (*Id.* at 172.) Father has not provided any additional documentation to demonstrate that he remains employed or has been employed since that time. (*Id.*)

With respect to visitation, Ms. Daugherty testified that Father has been visiting with the Children consistently since he was released from incarceration in September of 2014.[4] (*Id.* at 166, 173-174.) However, Ms. Daugherty expressed concern with respect to Father's behaviors during some of the visits. For example, Ms. Daugherty described a visit during which she and Father took the Children to a state park. (*Id.* at 197-198.) During the visit, Father informed Ms. Daugherty that he had been attacked by a corrections officer at a halfway house, and that he wanted to have the visit at the park because "this person knew his location and times of his visits, so it would be safer for him and the [C]hildren to be at a different location where this individual did not know where he was going to be at." (*Id.* at 198.) As the visit progressed, Ms. Daugherty discovered that Father

---

[4] On September 11, 2015, Ms. Daugherty testified that Father did not attend any of his visits with the Children since the first day of the termination and goal change hearing concluded on August 14, 2015. (Notes of testimony, 9/11/15 at 27-28.) Father cancelled each scheduled visit, indicating that he could not attend because he had to work overtime. (*Id.* at 28.) Father failed to provide any documentation in support of this claim. (*Id.* at 29.)

had parked his vehicle behind a building, rather than in the normal parking area. (*Id.* at 198-199.) Father explained that he parked the vehicle there so that "these other individuals could not find him." (*Id.* at 199.) Father also stated that there was someone "watching him to keep him safe, and there were at least three times during that visit that he was on the phone with someone stating his location and what all of us were wearing, to check in."[5] (*Id.*)

Finally, Ms. Daugherty testified concerning Father's parole. Ms. Daugherty believed that Father was required to complete a mental health assessment pursuant to his parole conditions, but Father only partially completed the assessment. (Notes of testimony, 9/11/15 at 57-58.) Ms. Daugherty suggested that Father may be suffering from mental health issues, as indicated by his secrecy, and his paranoid behaviors. (Notes of testimony, 8/14/15 at 212.) In addition, Ms. Daugherty explained that Father has repeatedly threatened to sue her, and to make her lose her job. (*Id.* at 218.)

Accordingly, the record confirms that Father is incapable of parenting the Children, and Father cannot, or will not, remedy his parental incapacity.

---

[5] Ms. Daugherty also described a visit which took place only three days prior to the start of the termination hearing, on August 11, 2015. (*See* notes of testimony, 8/14/15 at 187.) The visit had to be ended early due to Father continuously berating A.M.S. and threatening to "smack" her, among other things. (*Id.* at 187-189.)

As observed by the trial court, Father has refused or failed to cooperate with CYF, and he has failed to complete his FSP goals. Troublingly, Father's participation in the reunification process has actually become worse rather than better, as evidenced by Father's failure to visit with the Children following the first day of the termination hearing. It was proper for the trial court to conclude that the Children should no longer be denied permanence and stability. *See M.E.P.,* 825 A.2d at 1276 ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citations omitted).

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the

> > love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Here, the trial court found that the Children are bonded with Father. (Supplemental opinion, 11/10/15 at 3.)  The court observed that D.N.L.S. and S.H.S. have the healthiest bond with Father, while the bond between A.M.S. and Father has become unhealthy.  (*Id.*)  Despite the existence of these bonds, the court concluded that terminating Father's parental rights would not negatively impact the Children.  (*Id.* at 4.)  The court emphasized that the Children are doing well in foster care, and that the Children's foster parents can provide them with safety, security, and permanency.  (*Id.*)

Father contends that his bond with the Children should prevent the termination of his parental rights.  (Father's brief at 36.)  Father asserts that his bond with the Children is not outweighed by the Children's relationships with their respect foster parents.  (*Id.* at 36-37.)  Father emphasizes that he has obtained housing and employment, and he suggests that terminating his parental rights due to housing or financial issues would violate the portion of

Section 2511(b) dealing with environmental factors beyond the control of the parent. (*Id.* at 37.) *See* 23 Pa.C.S.A. § 2511(b) ("The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.").

We again conclude that the trial court did not err or abuse its discretion. Ms. Daugherty testified that pre-adoptive resources have been identified for all four of the Children. (Notes of testimony, 8/14/15 at 216.) A.M.S. and W.D.S. reside together in the same foster home, and S.H.S. and D.N.L.S. reside together in a separate foster home. (*Id.* at 176.) The Children appear to be comfortable in their respective residences. (*Id.* at 176-78.) Concerning the bond between Father and the Children, Ms. Daugherty explained that A.M.S.'s relationship with Father has deteriorated since she entered foster care. (*Id.* at 179.) Father and A.M.S. do not get along during their visits, and Ms. Daugherty believed that A.M.S. has an unhealthy bond with Father. (*Id.* at 180.) Ms. Daugherty opined that A.M.S. has a stronger bond with her foster parents. (*Id.*)

With respect to S.H.S. and D.N.L.S., Ms. Daugherty observed that they were excited to see Father during visits. (*Id.* at 183, 185-86.) D.N.L.S. in particular will sometimes become "clingy" and will not want to leave Father at the conclusion of visits. (*Id.* at 184.) However, Ms. Daugherty explained that D.N.L.S. quickly recovers after being returned to her foster home. (*Id.*)

Despite D.N.L.S.'s affectionate behavior, Ms. Daugherty agreed that D.N.L.S. appears to view Father more as an acquaintance than as a parental figure. (*Id.* at 185.)  Ms. Daugherty also opined that S.H.S. is more bonded with her foster family than she is with Father.  (*Id.* at 186.)  Ms. Daugherty explained that it is difficult to assess the bond between Father and W.D.S., because W.D.S. is very quiet.  (*Id.* at 181.)  Ms. Daugherty observed that W.D.S. is "usually pretty happy" to see Father, but she believed that the bond between W.D.S. and Father has weakened slightly.  (*Id.* at 181-82.)

Thus, the record supports the conclusion of the trial court that it would best serve the Children's needs and welfare to terminate Father's parental rights.  As observed by the trial court, A.M.S. and Father have an unhealthy bond.  While D.N.L.S., S.H.S., and W.D.S. appear to have a more positive relationship with Father, it is clear that this relationship is outweighed by Father's parental incapacity, and the Children's need for permanence and stability.  *See C.D.R.*, 111 A.3d at 1220 (concluding that the appellant mother's bond with C.D.R. was outweighed by the mother's "repeated failure to remedy her parental incapacity" and by C.D.R.'s need for permanence and stability).  In addition, we observe that terminating Father's parental rights does not run afoul of the portion of Section 2511(b) relating to environmental factors.  Father's parental rights were not terminated solely on the basis of these factors, and Father's failure to verify his housing and employment was not beyond his control.

Finally, we consider whether the trial court erred or abused its discretion by changing the Children's permanency goals to adoption.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to § 6351(f) of the Juvenile Act, [42 Pa.C.S.A. § 6351(f),] when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa.Super. 2011) (citations and quotation marks omitted).

In the instant matter, the trial court found that it would be in the best interest of the Children to change their permanency goals to adoption. (Adjudication, 9/25/15 at 11.) The court stressed that the Children have

been in foster care for over two years, and are in need of a permanent, safe, and stable environment. (*Id.*) In addition, the court expressed concern that Father is unable to parent the Children appropriately, and that Father has failed to maintain stable and adequate housing for the Children, failed to verify his employment, and failed to complete a mental health assessment. (*Id.* at 11-12.)

Father argues that the trial court abused its discretion by changing the Children's permanency goals, because he has cooperated with CYF and has continued to make progress toward reunification. (Father's brief at 38-42.) Father repeats his previous contentions that his ability to achieve reunification was limited by his incarceration and the conditions of his parole, and that he has obtained housing and employment. (*Id.* at 43-44.)

For the reasons discussed throughout this memorandum, we again conclude that the trial court did not err or abuse its discretion. Contrary to his argument on appeal, it is apparent that Father has not cooperated with CYF. Father has failed to provide verification of his housing and employment, and he remains incapable of parenting the Children. The record supports the trial court's conclusion that adoption will be in the Children's best interest.

Accordingly, because we conclude that the trial court did not err or abuse its discretion by involuntarily terminating Father's parental rights to

J. A09001/16
J. A09002/16

the Children, and by changing the Children's permanency goals to adoption,

we affirm the decrees and orders of the trial court.

Decrees affirmed. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016